IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) )  |
| v. | ) CRIMINAL NO. 5:22-CR-50032-002 ) |
| ETHAN DRISKILL | ) ) |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this agreement. The agreement of the parties is as follows:

### COUNTS OF CONVICTION AND DISMISSAL

1. The defendant, **ETHAN DRISKILL**, hereby agrees to plead guilty to Count ONE of the Indictment that charges him with the offense of Distribution of a Mixture or Substance that Contained Fentanyl Resulting in the Death of a Person in violation of Title 21 U.S.C. §§ 841(a)(1). If the court accepts this plea agreement, once the court has pronounced sentence, the government will move to dismiss the remaining counts on the Indictment pending against the defendant.

### CONSENT TO PROCEED BEFORE THE MAGISTRATE JUDGE

2. The defendant acknowledges that he has been advised and understands that he has a right to have a United States District Judge presiding when he enters a guilty plea and that he can exercise that right without concern or reservation. The defendant and the United States hereby consent to have the proceedings required by Rule 11 of the Federal Rules of Criminal Procedure incident to the making of the plea to be conducted by the United States Magistrate Judge. If, after conducting such proceedings, the Magistrate Judge recommends that the plea of guilty be accepted, a presentence investigation and report will be ordered pursuant to Federal Rule of Criminal

Procedure 32. The defendant acknowledges that his plea of guilty is subject to approval and acceptance by the District Judge and that sentencing will be conducted by the District Judge.

### WAIVER OF OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

3. The parties acknowledge that pursuant to 28 U.S.C. § 636(b)(1)(B), the failure to file objections to the Report and Recommendation within fourteen (14) days bars them from objecting to the District Court's acceptance of the guilty plea as recommended by the Magistrate Judge. Having been advised of the right to object to the Report and Recommendation, the parties wish to waive that right for the purpose of expediting acceptance of the guilty plea in this matter. Accordingly, evidenced by their signatures appearing below, the parties hereby waive the right to object to the Magistrate Judge's Report and Recommendation Concerning Plea of Guilty, and consent to acceptance of the same by the United States District Judge so that acceptance of the guilty plea may proceed forthwith.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

4. The defendant has fully discussed with defense counsel the facts of this case and the elements of the crime to which the defendant is pleading guilty. The defendant has committed each of the elements of the crime to which the defendant is pleading guilty, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

a. Agents with the Drug Enforcement Administration (DEA), Fayetteville Resident Office, assisted by detectives and officers with local law enforcement agencies are actively investigating the distribution of fentanyl in the Western District of Arkansas. During the course of this investigation, law enforcement identified ETHAN DRISKILL as a distributor of fentanyl operating in Northwest Arkansas.

  b.  On or about February 3, 2022, the Fayetteville Police Department responded to a report of a drug overdose resulting in the death of an individual. Upon arriving on the scene, officers located a deceased 29-year-old adult male, identified in Count One (1) of the indictment as "R.H." R.H.'s body was positioned face down on his living room floor. Officers located small amount of white substance and a syringe in close proximity to R.H.'s body. The white substance was later submitted to a crime laboratory for testing, and the laboratory determined the substance contained fentanyl.

  c.  On or about February 10, 2022, special agents with the DEA located and interviewed R.H.'s girlfriend. Per the girlfriend, on the night of January 31, 2022, she and R.H. combined their money in order to purchase heroin. To facilitate such, the girlfriend messaged DRISKILL, who had sold her heroin before. DRISKILL and the girlfriend made arrangements via electronic messages to meet at a gas station located in Fayetteville, which is in the Western District of Arkansas, to conduct the transaction. Both the girlfriend and R.H. traveled to the gas station, and upon arriving, the girlfriend got into DRISKILL's vehicle. Therein, she obtained a white substance which she believed, based on her communications with DRISKILL, to be heroin from DRISKILL in exchange for approximately sixty ($60) dollars. Per the girlfriend, both she and R.H. then returned to his Fayetteville Apartment, where R.H. diluted some of the white substance with water and injected it into their respective bodies via a syringe. The following morning, R.H. drove his girlfriend to her place of work, and agreed to pick her up later that evening. However, that afternoon R.H. stopped responding to text messages and calls and failed to pick up his girlfriend from work. That night, a significant snowstorm hit Northwest Arkansas, which prohibited the girlfriend from checking on R.H. On February 3, 2022, approximately two days later, the girlfriend went to check on R.H. and discovered his deceased body.

d.	As the investigation into DRISKILL continued, in February of 2022, a confidential source (CS) working at the direction of the DEA made two (2) separate undercover purchases of fentanyl from DRISKILL. One of said controlled buys was for counterfeit pills containing fentanyl and the separate controlled buy was for fentanyl in powder form. Law enforcement next obtained a state search warrant for DRISKILL's residence. On or about February 12, 2022, law enforcement executed the search warrant on DRISKILL's residence and located, among other items, a distribution amount of fentanyl.

e.	During a post-Miranda interview, Driskill admitted to selling fentanyl in both powder and counterfeit pill form in Northwest Arkansas. DRISKILL also admitted to meeting R.H.'s girlfriend at a gas station on January 31, 2022, and selling her a mixture of a substance containing fentanyl.

f.	During their investigation, DEA Special Agents learned that R.H. had a video surveillance camera set up in his living room and subsequently located recordings of such on his smart phone. The video footage from January 31, 2022, captured R.H. and his girlfriend discussing the purchase of heroin and then contacting DRISKILL. Thereafter, the couple left the residence and returned a short time later. Next, R.H. can be seen on the video removing a black case from his bookcase, placing it on his coffee table, and producing a syringe from the case. R.H. is then depicted with a small bag of white substance, which he eventually divides up, dilutes with water, and injects into his body. A short time later, he likewise injects his girlfriend. The following morning, both leave the residence. R.H. returns that afternoon. Significantly, at approximately 5:09 P.M., the video recording captures R.H. as he retrieves the same black case, sits down in a chair, and again injects himself with the same substance. Approximately nine (9) minutes later, he is seen

on the video recording having an apparent seizure and falling to the floor, where he remains face down for approximately two (2) days until his girlfriend discovers his body.

g. R.H.'s body was submitted to the Arkansas State Crime Laboratory where an autopsy was performed by Deputy Chief Medical Examiner, Dr. Stephen Erickson. Following the autopsy, Dr. Erickson concluded that the cause of R.H.'s death was an accidental drug overdose resulting from R.H.'s ingestion of controlled substances, including fentanyl. The Government's proof at trial would additionally include Dr. Erickson's opinion that, based on the autopsy performed on R.H. at the Arkansas State Crime Laboratory, R.H.'s death is a classic example of a fentanyl overdose.

h. Based on all of the evidence developed and recovered during the course of this investigation, the United States can prove that on or about January 31, 2022, the defendant, ETHAN DRISKILL, did knowingly and intentionally distribute a mixture or substance that contained fentanyl, a Schedule II controlled substance, in Western District of Arkansas, and that the distribution of that substance resulted in the death of R.H.

## ADVICE OF RIGHTS

5. The defendant hereby acknowledges that he has been advised of his constitutional and statutory rights. Further, the defendant agrees that he fully understands his right:

   a. To have an attorney and if he cannot afford an attorney, to have one provided to him and paid for at government expense;

   b. To persist in his plea of not guilty;

   c. To have a speedy and public trial by jury;

   d. To be presumed innocent until proven guilty beyond a reasonable doubt;

   e. To confront and examine witnesses who testify against;

    f.   To call witnesses on his behalf;

    g.   To choose to testify or not testify and that no one could force him to testify;

    h.   To have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

6. The defendant hereby acknowledges that he understands with respect to the count to which he pleads guilty, he thereby WAIVES all of the rights listed in (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

7. The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

8. The defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF
## THIS AGREEMENT BY DEFENDANT

9. Defendant agrees that if after signing this plea agreement the defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or if the defendant violates any term of this plea agreement, takes a

position at sentencing which is contrary to the terms of this plea agreement or attempts to withdraw from this plea agreement, this shall constitute a breach of this plea agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the defendant. The defendant shall, however, remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty.

10.     The defendant further agrees that a breach of any provision of this plea agreement shall operate as a WAIVER of defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the government shall be allowed to use and to introduce into evidence any one or more of the following:

   a. admissions against interest, both oral and written, made by defendant to any person;
   b. statements made by the defendant during his change of plea hearing;
   c. the factual basis used at the change of plea hearing;
   d. any testimony given under oath to a grand jury or petit jury;
   e. any and all physical evidence of any kind which the defendant has provided to the government; and
   f. any and all information provided by the defendant to the government's attorneys, or to federal, state, county, and/or local law enforcement officers.

### MAXIMUM PENALTIES

11.     The defendant hereby acknowledges that he has been advised of the maximum penalties for the count to which he is pleading guilty. By entering a plea of guilty to count ONE of the Indictment, the defendant agrees that he faces: *[handwritten: Per 18 USC. 841(b)(1)(C)]*

   a. a maximum term of imprisonment of LIFE;
   b. a mandatory minimum term of imprisonment of not less than 20 years;

*[handwritten initials and dates: 2-17-23; (SD) 2-17-23]*

    c. a maximum fine of $1,000,000;

    d. both imprisonment and a fine;

    e. a term of supervised release for not less than 3 years or not more than life which begins after release from prison;

    f. a possibility of going back to prison if the defendant violates the conditions of supervised release; and

    g. a special assessment of $100.00.

## CONDITIONS OF SUPERVISED RELEASE

12. The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the court. The standard conditions of supervised release are as follows:

    a. The defendant shall report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame.

    b. After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the defendant shall report to the probation officer as instructed.

    c. The defendant shall not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer.

    d. The defendant shall answer truthfully the questions asked by the probation officer.

    e. The defendant shall live at a place approved by the probation officer. If the defendant plans to change where he lives or anything about his living arrangements (such as the people the defendant lives with), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

    f. The defendant shall allow the probation officer to visit the defendant at any time at his residence or elsewhere, and the defendant shall permit the probation officer to take any items prohibited by the conditions of the

    defendant's supervision that he or he observes in plain view.
  g. The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so. If the defendant does not have full-time employment he shall try to find full- time employment, unless the probation officer excuses the defendant from doing so. If the defendant plans to change where the defendant works or anything about his work (such as the position or the job responsibilities), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.
  h. The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.
  i. If the defendant is arrested or questioned by a law enforcement officer, the defendant shall notify the probation officer within 72 hours.
  j. The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).
  k. The defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
  l. If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.
  m. The defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## NO OTHER CHARGES

13.    The government agrees that no other federal charges, which stem from activities described in the Indictment, will be brought against the defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

14. The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

15. The defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case. The defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court. Further, the defendant acknowledges that the actual range may be greater than contemplated by the parties. In the event that the actual guideline range is greater than the parties expected, the defendant agrees that this does not give him the right to withdraw his plea of guilty.

## RELEVANT CONDUCT CONSIDERED

16. At the sentencing hearing, the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of the Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

17. In the event that it is determined that the defendant has not been truthful with the Court as to any statements made while under oath, this plea agreement shall not be construed to protect the defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE GOVERNMENT

18. The government agrees not to object to a finding by the probation office or a ruling of the court which awards the defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater, and the Presentence Report awards two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the Government will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following a) falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement, b) falsely denies additional relevant conduct in the offense, or gives conflicting statements about that involvement, c) is untruthful with the Government, the Court or probation officer, or d) materially breaches this plea agreement in any way.

## GOVERNMENT'S RESERVATION OF RIGHTS

19. Although the government agrees not to object to certain findings by the probation office or to rulings of the court, it reserves the right to:

    a. make all facts known to the probation office and to the court;

    b. call witnesses and introduce evidence in support of the Presentence Report;

    c. contest and appeal any finding of fact or application of the Sentencing Guidelines;

    d. contest and appeal any departure from the appropriate Guideline range;

    e. defend the rulings of the District Court on appeal, even those for factors on which the government has agreed to make no recommendations, not to object, and/or to make recommendations.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

20. The government's concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the defendant acknowledges that there is no right to withdraw the guilty plea.

## DISMISSAL OF COUNTS

21. The government's agreement to dismiss certain counts of the Indictment is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. As a result, if the court should reject the government's motion to dismiss the agreed counts in the Indictment, the defendant shall be afforded the right to withdraw his plea pursuant to Rule 11(c)(5)(B) of the Federal Rules of Criminal Procedure.

## AGREEMENT NOT BINDING ON THE COURT

22. The parties agree that nothing in this agreement binds the District Court to:
    a. make any specific finding of fact;
    b. make any particular application of the Sentencing Guidelines;
    c. hand down any specific sentence;
    d. accept this plea agreement.

23. The government and the defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this plea agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

24. The parties agree that this plea agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESMENT

25. The defendant agrees that he will pay $100.00 as the special assessment in this case.

## PAYMENT OF MONETARY PENALTIES

26. The Defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c, and (ii), submitted to the Treasury Offset Program so that any federal payment such as an income tax refund or transfer of returned property the defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## REPRESENTATIONS BY THE DEFENDANT

27. By signing this plea agreement the defendant acknowledges that:

    a. The defendant has read this agreement carefully (or it was read to him) and reviewed every part of it with defense counsel.

    b. The defendant fully understands this plea agreement and is not under the influence of anything that could impede the defendant's ability to fully understand this plea agreement.

    c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this plea agreement.

    d. The defendant is satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters related to it.

    e. The defendant has entered into this plea agreement freely, voluntarily, and without reservation and the defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the defendant or anyone connected with the defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

28. By signing this plea agreement, counsel for the defendant acknowledges that:

   a. Counsel has carefully reviewed every part of this agreement with the defendant and this agreement accurately and completely sets forth the entire agreement between the United States and the defendant.
   b. Counsel has explained the ramifications of the plea agreement to the defendant, and believes that the defendant understands this plea agreement, what rights are being lost by pleading guilty, and what the government has agreed to do in exchange for the plea of guilty.
   c. The defendant's decision to enter into this agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

28. The defendant and his attorney both acknowledge that this plea agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the defendant to change his plea to guilty.

Dated this 27th day of January, 2022 [2023].

_____
ETHAN DRISKILL
Defendant

_____
CHARLIE PEARCE
Attorney for the Defendant

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

_____
Dustin Roberts
Assistant United States Attorney